UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-180 (SRN/DLM)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **MR. BURTON'S POSITION ON** |
| v. | ) | **SENTENCING** |
| | ) | |
| WILLIAM EARL BURTON, | ) | |
| | ) | |
| Defendant. | ) | |

William Earl Burton was born in 1998 in Minneapolis, Minnesota. He was the only child of his father, William, and mother, Dianne, but grew up with three older half-siblings. William was born into a family where addiction was rampant, and structure was inexistent. And unfortunately for William, much of what has happened in his life reflects that. By the time William was a year old, his family split up when his father's abuse of crack cocaine spiraled out of control. William stayed in his mother's care with his half-siblings. After years of separation, his parents divorced in 2003.

William's upbringing can be summarized in just one word: unstable. There was no shortage of addiction or abuse at home. William's mother struggled with severe bipolar disorder that was unaddressed by medication or therapy. Instead, she coped with alcohol. This was an extremely dangerous combination. William recalls that Dianne was a great mother and person when sober. But when she was intoxicated, she was emotionally and verbally abusive to William and his siblings. This was the core of instability throughout William's childhood. He never knew what to expect from his mother and had to be prepared for whatever version of his mother he would face. One day she would be a supportive, present, parent. The next, she would be drunk and abusive. There were times when

Dianne's alcohol abuse and mental health struggles became too much, and William resided with his father. Over the course of years, it was a constant back and forth between his parents. He was never in one place long enough to have what he thought was a "normal" childhood.

In 2012, Dianne's alcohol abuse was at an all-time high. She spent every cent she had to fuel her addiction, which led to their home being foreclosed on. William, who had already faced plenty of trauma and instability as a child, had now lost his home, too. His father did not have room in his home for William. With nowhere else to go, William moved in with his older sister Bridgett. He stayed at her home for around two years. William recalls that these two years with his sister were the most stable and consistent of his childhood.

William's unstable home environment translated to his education. His parents' instability resulted in him moving school districts constantly. By the time he had a stable routine with classes and made friends, he would move to a new school. He had to keep starting over. This interrupted his ability to get a consistent education and prevented him from having meaningful connections with his classmates. William simply could not keep up with the constant changing of schools, classes, and environments. So, he gave up. After completing the 10th grade, he completely dropped out of school. And he began to cope with his stress in the way it had always been modeled for him: substances.

William started drinking alcohol at the age of 14. It began as a way to cope with his struggles, as he had seen his mother do. But soon enough, he too became engulfed in addiction. He started using marijuana and experimenting with LSD. Drinking and using

became a part of his daily routine. This marked the beginning of an especially dark time for William that ultimately led to the offense conduct at hand.

Just days after Christmas 2015, William experienced a tragedy no brother could ever anticipate. His older sister, Haley Aymar, was an opiate addict and had been living on the streets in downtown Minneapolis. Despite being in active addiction, Haley did her best to maintain contact with her family and stayed active on her social media accounts. This gave William and his family comfort that despite her struggles, she was surviving. This contact abruptly stopped, which worried the Burton family. They reported Haley missing and searched everywhere for her. The disappearance of Haley had detrimental effects on the Burton family. They were devastated and worried, but also still hopeful that one day she would reappear safe and sound. As most of his family did, William coped with his feelings and pain

> On December 29, 2015, the Mounds View Police Department (MVPD) received a missing person report on Haley Elizabeth Aymar. She was last seen by a friend in downtown Minneapolis on December 3, 2015, which was also the date of her last social media update. In the past 10 years, MVPD has followed up on numerous leads and tips related to the investigation of her disappearance.
>
> On March 1, 2025, a human skull was found in the Lake Jones area of New Brighton. The New Brighton Department of Public Safety (NBDPS) conducted a three-day search of the heavily wooded and wetland area for further evidence. A dental record comparison completed on the skull in early 2026 identified it as Haley Elizabeth Aymar.
>
> NBDPS is seeking information from anyone who may have information on her whereabouts and/or acquaintances during early December 2015. Please submit via email haley@newbrightonmn.gov, by visiting the website below, or calling 651-288-4135.

3

surrounding this loss by abusing substances. Just this year (2026), she has been confirmed deceased[1].



Just a year after Haley's disappearance, William turned 18. He spent his birthday with his brother Max. It should have been a night of celebrating and having fun. That's what every 18-year-old would hope for on their birthday. Instead, his birthday spiraled out of control. It became an event that continues to traumatize William and established a complicated relationship between him and firearms. Max quickly became extremely intoxicated and disorderly in front of William. Having grown up with an alcoholic mother, this was nothing new for him. But things escalated when Max pulled out a firearm and pointed it directly at him. William panicked. He believed he was going to die. Fortunately, William was able to deescalate the situation and disarm Max. But William still struggles from the trauma he experienced this night (experiencing PTSD symptoms like flashbacks) and the detrimental effects it had on both his mental health and relationship with his brother.

In 2017 at age 19, William was the victim of yet another traumatic event involving a firearm. He and a friend were walking when gunfire suddenly rang out. By William's surprise, the shots were aimed at William and his friend. They immediately ran to find cover and escape the bullets flying at them. William's friend was struck by a bullet and

---

[1] https://www.kare11.com/article/news/local/woman-last-seen-minneapolis-missing-10-years/89-520603dc-0e88-4cab-a272-60ea8e5a9af7. Last Accessed February 1, 2026.

was able to recover after receiving medical attention. William was luckily not hit by any of the gunfire. Just a year later, William found himself in another situation in which he was shot at and narrowly escaped. He may not have been physically shot on either occasion. But the impacts of these events have left scars on his mental health that will take years and years of therapy to recover from.

The circumstances of William's background are important to the Court's 3553(a) analysis not just because the Court must consider his history and circumstances, but also because it explains how he became involved in the offense at hand. William had always been interested in firearms but in more of a passing way. But after having been in situations where he felt unsafe *without* a firearm, his interest in them began to grow. And he began to understand why people own them. Because William had never been convicted of a felony, he was able to legally purchase them.

But these circumstances also explain the offense conduct in another way. Immediately after the shootings, William's substance use heightened when he began to abuse oxycodone and M30s in addition to alcohol and marijuana. Drugs completely took over William's life. It was his priority. And he needed funds to supply his habit. Without thinking clearly due to his drug addiction, he began selling firearms. This gave him enough funds to fuel his habit. He did not think critically or weigh the pros and cons of that decision. To him, it made sense why people would feel safer if they possessed firearms, just as he felt safer by it.

William recognizes that he did not consider the effects his actions may have had. It must be made clear that he was not selling the firearms to the people with whom they ended

up with. That is, he sold firearms to his friends—people he did know—and they sold those firearms to others. He in no way intended to put guns in the hands of those who wanted to shoot others. While we may naturally want to say that he "should have known", he was 21 years old at the time of this offense; he was struggling with a severe drug addiction; and he was not selling them to people he believed would commit crimes with them. He thought he was selling to friends and the firearms would stay with them. The first time William was informed that someone had been hurt was when the ATF approached him about this offense. He was shocked and still to this day is incredibly remorseful for what he has done. Now that he has been sober for some time, William realizes that impact and his direct role in it. As he said in his acceptance of responsibility statement, "the situation that I am in right now feels surreal. It feels like I can't be connected to or involved in anything like this." He feels immense remorse for the victims of those events. And while he cannot go back in time and make things different, he knows the best way to show his remorse is to work on himself. That work begins far before the end of any sentence imposed on him. William is committed to maintaining lasting sobriety and addressing his PTSD and childhood trauma so that he can return to society and positively impact it.

## I. Objections to the Guideline Range in the PSR, the True Advisory Guideline Range & Mr. Burton's Sentencing Request

William Burton accepted responsibility for and has been convicted of one count of conspiring to make false statements while purchasing firearms. This count carries no mandatory minimum. It has a statutory maximum of 5 years.

The parties have objected to the guidelines listed in the PSR. There, the advisory

guideline range for Mr. Burton is 41-51 months based on an offense-level of 21 and criminal history category of II.

Parties objected to two enhancements included in the PSR (one for transferring to a person that Burton knew was a prohibited person (see subparagraph of PSR 28) and the other for obstructing justice (see PSR 32)).  Neither were contemplated by the parties' plea agreement and the government has already indicated their intent to stand by the terms of that bargained-for resolution and to not introduce facts to support it at any sentencing hearing. Mr. Burton has timely objected to the enhancements and any facts in the PSR purporting to support that claim. As a matter of law, then, at the time of sentencing there will not be facts in the record that meet the preponderance standard necessary to support the enhancement. Mr. Burton, along with the government, therefore respectfully submits to this Court that the total offense level is 17, the criminal history category II, and the beginning guideline is 27-33 months.

The government asks the Court impose a sentence of no less than 33 months. Mr. Burton respectfully argues that a 27-month sentence meets the goals of federal sentencing.

## II.     Mitigating Offense Conduct

Apart from outstanding PSR objections, the facts of this offense are accurately described in the PSR.

It should be noted that when Mr. Burton purchased the firearms, he was not prohibited from doing so. That is, he was not a felon at the time of any of those purchases. He pled guilty to his first felony in November 2021, and was sentenced in January 2022. It is unclear on which date the guilty plea would have been accepted (which date his felony

conviction became final). Regardless, the last of the firearms was purchased before both of these dates, on August 29, 2020. ECF 5, Indictment.

It should also be noted that the firearms ended up in the hands of people that Mr. Burton did not sell directly to.

Lastly, it should be noted that Mr. Burton did not buy/sell any more firearms after ATF executed a search warrant at his home and told him (1) that even though he is not a prohibited person, he cannot buy firearms and sell them to others; (2) that firearms were ending up with people who were using them to hurt people. This does show that once he did know, he stopped these activities.

### III.   Mr. Burton Can Succeed In The Future

It should be no surprise to the Court that Mr. Burton has experienced a plethora of trauma. Addiction was embedded in the norms of the Burton family. His father abused crack cocaine, his mother and brother abused alcohol, and his sister abused opiates. He was never exposed to healthy coping mechanisms and therefore he responded to his trauma the way it was modeled for him. Unfortunately, this addiction of William's led to more and more issues, including this offense. But that does not mean that William is incapable of making real, positive, changes for himself. As his father puts it, William "needs structure in his life, and that, when he is working and going to school, he does very well". While he did not have much of that structure for most of his life, he has proven that statement to be true. In 2023, while in the structured confines of the Anoka County Workhouse, William was able to go back to school and obtain his GED. He was able to focus. His environment was stable and had a consistent routine. And this allowed him to accomplish a huge goal.

The same goes for the time William has been in the Sherburne County Jail during the pendency of his case. He has again been provided with structure that has allowed him to stay sober, complete programming, and address his mental health struggles.

    Mr. Burton has very limited criminal history and the criminal history he does have is a result of his drug addiction. Mr. Burton has enjoyed the sobriety he has gained over the past months and feels better mentally and physically. He views this case as a wake-up call and plans to continue working and programming so that he does not find himself in this situation again.

Dated: February 2, 2025

Respectfully submitted,

*s/Lisa M. Lopez*

LISA M. LOPEZ
Attorney ID No. 395791
Attorney for Mr. Burton
107 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415